UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| SANDRA J. MATELSKE, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | Case No. 1:12-cv-93 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) or supplemental security income (SSI) benefits. On May 19, 2008, plaintiff filed her applications for benefits alleging an April 1, 2001 onset of disability.[1] (A.R. 119-26). Plaintiff's disability insured status expired on December 31, 2006. Thus, it was plaintiff's burden on her claim for DIB benefits to submit evidence demonstrating that she was disabled on or before December 31, 2006. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff's claims for DIB and SSI benefits were denied on initial review. (A.R. 70-78). On August 18, 2010, she received a hearing before an administrative law judge (ALJ), at which

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n. 5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, June 2008 is plaintiff's earliest possible entitlement to SSI benefits.

she was represented by counsel. (A.R. 13-42). On October 25, 2010, the ALJ issued her decision finding that plaintiff was not disabled. (A.R. 50-65). On December 1, 2011, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the ALJ's decision should be overturned on the following grounds:

1. The Commissioner "erred in failing to give due consideration to the opinions of treating and consultative opinion" [sic]; and

2. The Commissioner committed legal error "in taking administrative notice of matters not in evidence[.]"

(Plf. Brief at ID# 439, docket # 12). I recommend that the Commissioner's decision be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence

shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from April 1, 2001, through December 31, 2006, but not thereafter. (A.R. 52). Plaintiff had not engaged in substantial gainful activity on or after April 1, 2001. (A.R. 52). The ALJ found that plaintiff had the following severe impairments: anxiety, affective disorder, history of polysubstance abuse in sustained remission, degenerative disc disease of the cervical spine, and a torn left rotator cuff. (A.R. 52). Plaintiff did not have an impairment or combination of impairments

which met or equaled the requirements of the listing of impairments. (A.R. 52). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the additional limitations of frequent but not constant overhead reaching with the non-dominant left arm; the claimant cannot be exposed to heights or hazards; the claimant can only have occasional interaction with supervisors and coworkers; the claimant can only be given simple instructions; the claimant is limited to routine, repetitive tasks; the claimant can have no interaction with the public; and the claimant is limited to low stress work which is defined as only occasional changes in the work setting.

(A.R. 56-57). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (A.R. 57-63). Plaintiff was unable to perform her past relevant work. (A.R. 63). Plaintiff was 39-years-old as of her alleged onset of disability, 44-years-old when her disability insured status expired, and 48-years-old as of the date of the ALJ's decision. Thus, at all times relevant to her claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (A.R. 63). Plaintiff has at least a high-school education and is able to communicate in English. (A.R. 63). The transferability of jobs skills was not an issue because all plaintiff's past relevant work was unskilled. (A.R. 63). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 12,000 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (A.R. 38-39). The ALJ found that this constituted a significant number of jobs. Using Rule 202.20 of the

Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled.[2] (A.R. 64-65).

**1.**

Plaintiff argues that the ALJ "erred in failing to give due consideration to the opinions of treating and consultative opinion" [sic]. (Plf. Brief at ID#443). Unfortunately, her brief fails to identify any opinion from any treating or consultative physician that failed to receive appropriate weight. (*Id.* at ID#s 443-45). Plaintiff quotes a fragment of one of the ALJ's four subsidiary findings regarding the Paragraph B severity component of listings 12.04 and 12.06, but her brief contains no developed argument that she met or equaled the requirements of a listed impairment. (Plf. Brief at ID# 444). Issues raised in a perfunctory manner are deemed waived. *See Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012).

Even assuming that plaintiff did not waive these issues, they are meritless.

---

[2]Plaintiff has a history of heroin, crack cocaine, and marijuana use. (A.R. 243, 324, 350, 401-03). She also has a criminal conviction for prescription fraud in 2008. (A.R. 58, 243). The court ordered that plaintiff undergo substance abuse treatment. (A.R. 243). The ALJ found that plaintiff's prescription fraud conviction and other evidence of her lack of candor regarding her drug use undercut her credibility: "Also affecting the claimant's credibility is a conviction of obtaining a controlled substance by fraud. She has denied her legal history to a physician in the past (Exh. 13F, p. 15)[A.R. 350]. Furthermore, she tested positive for marijuana in June of 2009, despite testifying that she stopped smoking in 2006 (Exh. 9f, p 3)[A.R. 276]." (A.R. 61).

Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that substance abuse was not a factor contributing to her disability. *See Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. 2012); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability. *See Gayheart v. Commissioner*, 710 F.3d at 380.

### A. Listed Impairments

The ALJ found that plaintiff did not meet or equal the requirement of any listed impairment. (A.R. 53-56). Listed impairments are impairments that are so severe that they render entitlement to benefits a "foregone conclusion." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006). It is well established that a claimant must show that she satisfies all the individual requirements of a listing.[3] *See Elam*, 348 F.3d at 125; *see also Perschka v. Commissioner*, 411 F. App'x 781, 787 (6th Cir. 2010). "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Malone v. Commissioner*, 507 F. App'x 470, 471 (6th Cir. Nov. 2012). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125.

The ALJ noted that the claimant's attorney "did not argue that the claimant's impairments met or equaled a listing" (A.R. 53) and her attorney offers no such argument on appeal. Instead, plaintiff attacks one of the ALJ's subsidiary findings regarding the paragraph B severity requirements, in which the ALJ found that plaintiff's mental impairments resulted in a "mild"

---

[3]"Administrative law judges employ a five-step sequential inquiry to determine whether an adult claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

restriction of daily activity living. (Plf. Brief at ID# 444). This argument cannot possibly provide a basis for overturning the Commissioner's decision.[4]

The ALJ found that plaintiff's mental impairments did not satisfy the paragraph B requirements of listings 12.04 and 12.06. (A.R. 53). Her opinion includes an accurate summary of the paragraph B requirements: "To satisfy the 'paragraph B' criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within one year, or an average of once every four months, each lasting for at least 2 weeks." (A.R. 53). The ALJ found that plaintiff had "mild" restriction in activities of daily living, "moderate" restriction in social functioning, "moderate" restriction in maintaining concentration, persistence, or pace; and no episodes of decompensation. (A.R. 53-56). Among other things, the ALJ noted that there was no evidence that plaintiff had ever been admitted to a psychiatric institution. (A.R. 56).

Plaintiff's argument attacking the ALJ's factual finding that she had "mild" restriction in activities of daily living consists of an inaccurate quotation of a sentence in the ALJ's opinion, an inaccurate citation to the sentence's location in the administrative record, and a conclusion that

---

[4] Even assuming that the ALJ committed error by not finding a more significant limitation in the plaintiff's activities of daily living, the error would be harmless, because plaintiff has not carried her burden of demonstrating that she met all the other requirements of a listed impairment. *See Norman ex rel. MDN v. Commissioner*, No. 1:11-cv-903, 2012 WL 5874476, at * 9 (W.D. Mich. Nov. 20, 2012) (collecting cases); *Patterson ex rel. TJP v. Astrue*, No. 09-11621, 2010 WL 2218629, at * 4 (E.D. Mich. May 6, 2012) ("This error is harmless because only one 'marked' limitation does not establish that the claimant functionally met the Listing.").

"little else is given as explanation for rejection of both treating and examining opinion." (Plf. Brief at ID# 444). The ALJ stated: "I have given great weight to the opinions of the medical expert, Ellen Rozenfeld, Psy.D[.], and H.C. Tien, M.D., the psychiatric consultant, as they both support a mild restriction in activities of daily living." (A.R. 54). In paragraphs preceding this sentence, the ALJ gave a summary of plaintiff's daily activities and other evidence supporting her finding that plaintiff had "mild" restriction in her activities of daily living. (A.R. 53-54). After the above-quoted sentence, the ALJ identified the specific evidence provided by these medical professionals supporting her factual finding that plaintiff had mild restriction in activities of daily living. (A.R. 54). Plaintiff's allusion to unspecified "overwhelming evidence" supporting her claims (Plf. Brief at ID# 444) does not approach satisfying her burden on appeal. Plaintiff's burden is not met merely by citing evidence on which the ALJ could have based a decision in her favor. *Jones v. Commissioner*, 336 F.3d at 477. The standard of review is whether the ALJ's factual findings are supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. at 401. The ALJ's finding that plaintiff did not meet or equal the requirements of any listed impairment (as well as the ALJ's related subsidiary findings regarding the paragraph B requirements, including daily activities) is supported by more than substantial evidence.

**B.    Treating Physician Rule**

Plaintiff argues that the ALJ violated the treating physician rule, but she fails to identify any medical opinion by any treating physician that failed to receive appropriate weight. (Plf. Brief at ID#s 443-45). Elsewhere in her brief, plaintiff refers to David Mack, D.O., and Peter Cooke,

M.D., as "treating physicians" (*Id.* at ID#s 440, 441), and it is assumed for present purposes that plaintiff was referring to these individuals.

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the

other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

1. Dr. Mack

Dr. Mack was not a treating physician at any time relevant to plaintiff's claim for DIB benefits. Plaintiff claimed an April 1, 2001 onset of disability, and her date last disability insured was December 31, 2006. Dr. Mack's first contact with plaintiff was in 2010, more than three years after her disability insured status had expired. Plaintiff provided minimal evidence regarding the psychological care that she received during the period relevant to her claim for DIB benefits. The ALJ carefully considered what little evidence she had to work with:

> The claimant contacted Community Mental Health's Emergency Services after work on March 21, 2001 because she reported that she wanted to start treatment after spending four days in bed and because she was performing her parental responsibilities on a very minimal level (Exh. 16F, p. 4). She reported that she was not receiving any outpatient mental health treatment at the time, but her psychiatric medications did not seem to be helping her (Exh. 16F, p. 5). It was noted that she had a flat affect, and was having some suicidal thoughts, but would not commit suicide because she had children to take care of (Exh. 16F, p. 5). The claimant was diagnosed with major depression, recurrent. She expressed interest in starting intensive short term mental health treatment to help her avoid hospitalization (Exh. 16F, p. 5).
>
> The claimant underwent a mental examination on August 6, 2001 with Dr. Jimmy Harris because she was reportedly suffering from depression with decreased concentration and poor memory (Exh. 16F, p. 27). She was allegedly having difficulty sleeping at night, was having crying spells, was having some suicidal thoughts, and had lost weight due to diminished appetite (Exh. 16F, p. 27). The claimant had supposedly been clean from drugs for the last four years. The claimant was diagnosed with major depressive disorder, recurrent, moderate, without psychotic features; anxiety disorder; opioid dependence in full remission; cannabis abuse; borderline traits; and was given a GAF of 41 (Exh. 16F, p. 28). Dr. Harris considered her prognosis to be fair, and continued her on Paxil 60 mg, Klonopin 0.5 HS, and BuSpar 15 mg twice a day (Exh. 16F, p. 29). The claimant [was] not seen again by Dr. Harris after she failed to show for a therapy session on March 11, 2002.
>
> On May 21, 2002, the claimant visited Ingham Regional Medical Center because she was reportedly experiencing withdrawal-like symptoms, such as sweating, shaking, and restlessness after being off her Vicodin for two days (Exh. 1F, p. 6). She was discharged that day in stable condition with prescriptions for Ativan 1 mg every 12 hours, and Immodium AD as needed. The claimant was also referred to Sparrow Substance Abuse for substance abuse counseling (Exh. 1F, p.12).

(A.R. 59-60). There is no evidence that plaintiff received or required mental health treatment during the remainder of 2002, or at any time in 2003 or 2004.

A medication summary from the Cristo Rey Family Health Clinic (A.R. 287) indicates that plaintiff received prescriptions in December 2005, March 2006, and October 2006, but none of the underlying progress notes for this period were produced in support of plaintiff's claims for DIB and SSI benefits. (A.R. 287). There is a progress note from Dr. Cooke dated November 26, 2006 (A.R. 305), but it is followed by a gap in progress notes which extends to January 18, 2008. (A.R. 311). In 2008 and 2009, Dr. Cooke prescribed a number of drugs in response to plaintiff's subjective complaints of pain, depression, and anxiety.[5] The most recent objective medical test found in the medical records from Cristo Rey is plaintiff's urine drug screen dated June 1, 2009, which was positive for cannabinoids. (A.R. 299).

On June 18, 2008, plaintiff received a consultative mental status examination. (A.R. 242-45). The ALJ summarized the results of the examination as follows:

> After performing a mental status examination, reviewing the results of WRAT-3 exams in reading and math, and reviewing notes from Cristo Rey Community Center, John D. Jeter, M.A. L.L.P., LMSW, diagnosed the claimant with a history of poly-substance dependence in ten years remission, history of depressive disorder, generalized anxiety disorder (mild with meds), and assessed her with a GAF[6] of 62 (Exh. 3F, p. 4). A GAF indicates the presence

---

[5]The records regarding treatment that plaintiff received at Cristo Rey by Dr. Cooke are discussed in greater detail in section 1(B)(2), *infra*.

[6]None of the subjective GAF scores discussed herein were entitled to any particular weight. *See Kornecky v. Commissioner*, 167 F. App'x 496, 511 (6th Cir. 2006). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009). A GAF score is a subjective rather than an objective assessment. *Id.* "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment,

of some mild symptoms (e.g., depressed mood and mild insomnia) some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning well, has some meaningful relationships. Furthermore, the examiner indicated that the claimant has mild social restrictions, and is able to perform her activities of daily living, with only some limitations on her ability to lift (Exhibit 3F, p. 4).

(A.R. 53).

In March 2010, more than three years after her date last disability insured, plaintiff appeared at Lansing Psychological Associates (LPA) and began seeing therapist Teresa Braden and Dr. Mack. (A.R. 207, 336-39). Ms. Braden was plaintiff's primary contact at LPA. (A.R. 336-39, 352, 354-57, 359-60, 363-68). LPA's records reveal that plaintiff saw Dr. Mack on three occasions, for a total time of less than two hours.[7] On April 30, 2010, Dr. Mack conducted an initial one-hour evaluation. Plaintiff related that she was unemployed and applying for disability. She had no history of psychiatric hospitalization. She had seen someone at Community Mental Health about a decade earlier. In response to the inquiry about her alcohol and drug abuse history, plaintiff described herself as a social drinker and stated that she had used THC in her 20s, but "nothing now." Dr. Mack offered a diagnosis of a major depressive disorder, recurrent, moderate and a panic disorder. He started plaintiff on medication. (A.R. 361-62). Plaintiff had 20-minute medication reviews with Dr. Mack on May 25, 2010, and July 20, 2010. (A.R. 353, 358).

---

understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n.7. The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM–IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning." *Kornecky*, 167 F. App'x at 511; *see Oliver v. Commissioner*, 415 F. App'x 681, 684 (6th Cir. 2011).

[7]If the ALJ had found that Dr. Mack was not a treating physician because his contact with plaintiff was limited to the three visits, that finding would have been supported by substantial evidence. *See Kornecky v. Commissioner*, 167 F. App'x at 506-07.

On July 30, 2010, Therapist Braden completed a "Mental Residual Functional Capacity Questionnaire." (A.R. 369-73). She indicated that she had been seeing plaintiff for four months and that they had "weekly to bimonthly contact." (A.R. 369). Dr. Mack's name appears at the end of the questionnaire (A.R. 373), and it is assumed for present purposes that he read the opinions Ms. Braden stated, and agreed with them. In response to plaintiff's attorney's question regarding the earliest date the proposed limitations applied, Ms. Braden and Dr. Mack responded "3/29/10 or before." (A.R. 373). There is no explanation of the foundation of any opinion regarding plaintiff's purported limitations before she first appeared at LPA in March 2010.

On August 10, 2010, Dr. Mack wrote a letter to the ALJ stating that he was making a correction in plaintiff's GAF score: "Her current GAF is 45 and her highest GAF for the past year is 55." (A.R. 375).

The ALJ found that the restrictions suggested by Ms. Braden and Dr. Mack in the RFC questionnaire were entitled to little or no weight:

> As for the other opinion evidence, a Mental Residual Functional Capacity Questionnaire completed on July 30, 2010 by or on behalf of Dr. David Mack, a doctor at Lansing Psychological Associates, indicated diagnoses of depressive disorder, moderate; and panic disorder with agoraphobia, with a current GAF of 45 (Exh. 14F, p. 1). I do not credit the opinion from Dr. Mack any weight. Under the regulations, I must consider the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion. See 20 C.F.R. § 404.1527(d)(2).
>
> Dr. Mack's opinion was rendered after a very short period of contact with the claimant. Dr. Mack first saw the claimant about four months prior to rendering his opinion, and the notes from these few therapy sessions do not support a finding that the claimant is unable to work. The opinion evidence is also inconsistent with the findings contained within the consultative examination (Exh. 3F), and the responses contained in the Medical Source Statement completed by Dr. Rozenfeld (Exh. 10F). Furthermore, after comparing the signatures found in the medical records from Lansing Psychological Associates to the signature on the Mental Residual Functional Capacity Questionnaire, it appears that the questionnaire was filled out

by a therapist for Dr. Mack (Exh. 14F, 13F). According to SSR 06-3p, therapists are not acceptable treating sources. For these reasons, this opinion is given little weight.

(A.R. 62).

Plaintiff's argument that the RFC questionnaire responses were "authored by" Dr. Mack cannot withstand scrutiny. (Plf. Brief at ID#s 441, 447). Therapist Braden's handwritten notes show beyond question that she was the author of the questionnaire responses. Equally meritless is plaintiff's argument that the ALJ committed error "in taking administrative notice of matters not in evidence" when she noticed that the questionnaire had been completed in the therapist's handwriting and observed that a therapist was not an "acceptable medical source." (*Id.* at ID#s 445-47). A therapist clearly is not an "acceptable medical source," as a matter of law. *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d); *see also Payne v. Commissioner*, 402 F. App'x 109, (6th Cir. 2010) ("[S]ocial workers are not acceptable medical sources under social security regulations."). There is no "treating therapist rule," and the opinion of a therapist is not entitled to any particular weight. *See Hill v. Commissioner*, No. 1:12-cv-235, 2013 WL 2896889, at * 2 (W.D. Mich. June 13, 2013) (collecting cases). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)); *see also Bliss v. Commissioner*, 406 F. App'x 541 (2d Cir. 2011) ("[T]he assessment by the social worker is ineligible to receive controlling weight because social workers do not qualify as 'acceptable medical sources.'"); *Turner*

*v. Commissioner*, 613 F.3d 1217, 1223-24 (9th Cir. 2010). The opinions of a therapist fall within the category of information provided by "other sources." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4 (citing 20 C.F.R. §§ 404.1512, .1527, 416.912, .927); *see Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007). This is not a demanding standard. It was easily met here. The ALJ found that Ms. Braden's opinions were not supported by the record and were contrary to the opinions expressed by Dr. Rozenfeld. (A.R. 62).

Dr. Ellen Rozenfeld, a licensed clinical psychologist, gave her expert medical opinion in this matter. (A.R. 314-25). She opined that plaintiff's mental impairments fell far short of the requirements of any listed impairment. Dr. Rozenfeld indicated that plaintiff had few work-related limitations stemming from mental impairments:

> With regard to work related limitations, the claimant retains the mental capacity to concentrate on, understand, and remember both simple and more detailed instructions. Her ability to carry out tasks with adequate persistence and pace would be moderately impaired for complex tasks but adequate for the completion of routine, repetitive tasks. She is able to follow and sustain an ordinary routine without special supervision and make simple work related decisions. The claimant's ability to interact with and get along with the general public, coworkers and supervisors is moderately limited but adequate for occasional contact. She would do best in a work setting which does not require sustained interaction with the general public or close cooperation with coworkers. The claimant's ability to handle stress and changes in the work place would be reduced but adequate to tolerate routine changes.

(A.R. 325). The ALJ found that Dr. Rozenfeld's opinion was consistent with the record and more persuasive than the questionnaire responses provided by Ms. Braden and Dr. Mack. The ALJ is responsible for weighing the opinions regarding plaintiff's mental impairments, not the court. *See Buxton*, 246 F.3d at 772-75; *accord White v. Commissioner*, 572 F.3d at 284. I find no violation of the treating physician rule.

### 2. Dr. Cooke

Plaintiff began seeing Dr. Cooke in 2005, years after her alleged onset of disability. Plaintiff filed very few treatment records from Dr. Cooke in support of her claims for DIB and SSI benefits. (A.R. 275-311, 333-35). On January 18, 2008, plaintiff returned to Dr. Cooke after a fourteen-month absence and requested a refill of a prescription pain medication. (A.R. 311). On February 19, 2008, Dr. Cooke noted that plaintiff "need[ed] a list of all [her] med[ications] to give to [her] probation officer." (A.R. 310). Dr. Cooke observed that plaintiff had "0 visits" to Community Mental Health. In response to plaintiff's complaints of anxiety, Dr. Cooke gave her prescriptions for Zyprexa and Clonazepam. (A.R. 310).

On May 13, 2008, plaintiff stated that she was feeling better. (A.R. 308). On May 19, 2008, plaintiff filed her applications for DIB and SSI benefits. On June 24, 2008, plaintiff stated that she could not return to work until her son was back in school. (A.R. 307). On December 15, 2008, plaintiff reported increased symptoms. Dr. Cooke offered a diagnosis of seasonal affective disorder. (A.R. 304). In January 2009, plaintiff reported that the medication provided by Dr. Cooke helped with her panic attacks. (A.R. 303). In April 2009, Dr. Cooke gave plaintiff a Clonazepam prescription. (A.R. 301). On June 1, 2009, Cooke noted that plaintiff had a "disability case pending." He stated that he would check plaintiff's drug screen. (A.R. 298). The drug screen was positive for marijuana use. (A.R. 276, 299). On July 2, 2009, Dr. Cooke noted that plaintiff was scheduled to start a work program in September. He stated that plaintiff was "doing well" on the Pristiq that he had prescribed for her depression and anxiety. (A.R. 333). On October 12, 2009, plaintiff reported a recent onset of back pain. (A.R. 292). On November 2, 2009, plaintiff stated that she continued to experience back pain. She wanted a refill of medication and a "work excuse."

(A.R. 291). Plaintiff received an excuse keeping her off work until December 2, 2009. (A.R. 291). On April 14, 2010, plaintiff reported that she had lost her Vicodin. Dr. Cooke informed plaintiff that he would not give her a refill. (A.R. 335).

On April 14, 2010, Dr. Cooke completed a "Physical Residual Functional Capacity Questionnaire." (A.R. 326-30). The ALJ found that the restrictions suggested by Dr. Cooke were not supported by his own treatment records or objective evidence:

> Dr. Peter Cooke completed a Physical [R]esidual Functional [C]apacity Questionnaire on April 14, 2010, which indicated that the claimant was unable to work competitively, because while she would be able to perform work at the sedentary exertional level, her symptoms would cause her to be absent about four days per month (Exh. 11F, p 4). However, the doctor's treatment records do not reveal any objective evidence that supports such a limited ability to sit, stand, or walk. Dr. Cook's opinion is not at all supported by the objective medical evidence.

(A.R. 62). The issue of RFC is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3). The restrictions Dr. Cooke suggested were not supported by his progress notes or the objective evidence. Dr. Cooke recorded plaintiff's subjective complaints (*see e.g.*, A.R. 289, 291, 293, 301), but there is nothing in his progress notes indicating that she had difficulty standing, sitting, or walking. Further, plaintiff's MRI showed that she had "mild" degenerative changes in her cervical spine. There was no evidence of cord or nerve root impingement. (A.R. 238, 283-84). There was no disc herniation or central spinal stenosis. There was no evidence of any paraspinal soft tissue abnormality. (A.R. 238, 283).

Plaintiff stopped working[8] in April 2001. Dr. Cooke's unsupported questionnaire response in 2010 opining that if plaintiff had been working thereafter she would probably have

---

[8] The ALJ noted that the "record suggests that the claimant may have stopped working in order to take care of her son, not due to any physical or mental limitations." (A.R. 61).

missed about four days of work per month was conjecture, not a medical opinion entitled to deference. *See Murray v. Commissioner*, No. 1:10-cv-297, 2011 WL 4346473, at * 7 (W.D. Mich. Aug. 25, 2011) (collecting cases). Dr. Cooke stated that plaintiff was capable of performing "low stress jobs." The ALJ incorporated a limitation of "low stress work" in her factual finding regarding plaintiff's RFC. (A.R. 57, 327). I find no violation of the treating physician rule.

**2.**

Plaintiff argues that the Commissioner committed "legal error in taking administrative notice of matters not in evidence" when she described plaintiff's medical care as "conservative." (Plf. Brief at ID#s 445-47). The period at issue spans almost a full decade: April 1, 2001, to October 25, 2010. Plaintiff's only hospital emergency room record for this entire period was for her episode of Vicodin withdrawal on May 21, 2002. (A.R. 223-30). Plaintiff never required hospitalization for her mental impairments. Conservative treatment is convenient shorthand for relatively minimal and minimally invasive care. *See, e.g.*, *LeFevers v. Commissioner*, 476 F. App'x 608, 610 (6th Cir. 2012); *Jones v. Commissioner*, No. 2:12-cv-110, 2012 WL 5378850, at * 7 (S.D. Ohio Oct. 30, 2012). I find no error.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: August 5, 2013          /s/ Joseph G. Scoville
                               United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).