UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA JUNE MATELSKE,

    Plaintiff,

                                      Case No. 1:12-CV-93

v.

                                      HON. ROBERT HOLMES BELL

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **O P I N I O N**

On August 5, 2013, Magistrate Judge Joseph G. Scoville issued a Report and Recommendation ("R&R") recommending that the decision of the Commissioner of Social Security that Plaintiff Sandra June Matelske was not entitled to disability insurance benefits ("DIB") or supplemental security income ("SSI") benefits be affirmed. (Dkt. No. 17.) This matter is before the Court on Plaintiff's objections to the R&R. (Dkt. No. 18.)

This Court makes a *de novo* determination of those portions of an R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). The Court may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. *Id.*

## I.

Plaintiff alleges four errors of law and one error of fact.

**A. Alleged Errors of Law**

First, Plaintiff objects to the Magistrate Judge's failure to note that there is a concurrent claim for SSI benefits when he held that certain post-2006 evidence was not relevant to Plaintiff's claim for DIB. This objection is not supported by the R&R. As Plaintiff acknowledges, the Magistrate Judge correctly held that, for purposes of Plaintiff's DIB claim, she was required to submit evidence demonstrating that she was disabled on or before December 31, 2006, the date her disability insured status expired. (R&R, at 1, 11.) Contrary to Plaintiff's objection, the Magistrate Judge never extended this holding to Plaintiff's claim for SSI benefits, and correctly considered Plaintiff's evidence from 2008 to the present when discussing the evidence relevant to Plaintiff's claim for SSI benefits.[1] (*See* R&R, at 12-19.)

Second, Plaintiff objects to the ALJ and Magistrate Judge's treatment of the opinion of Teresa Braden, a therapist who authored a Mental Residual Functional Capacity Questionnaire. While Plaintiff concedes that Braden is not an "acceptable medical source" according to 20 C.F.R. §§ 404.1513(a) and 416.913(a), and is instead properly characterized as an "other source," it is Plaintiff's position that the ALJ was nevertheless required to

---

[1] Because SSI benefits may not be awarded retroactively, Plaintiff's earliest entitlement to such benefits would be June 2008, the month after she filed her application for SSI benefits. *See Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004).

analyze Braden's opinion using the following factors: how long the source has known and how frequently the source has seen the individual, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source's specialty or area of expertise related to the individual's impairment, and any other factors that tend to support or refute the opinion. (Objs. at 3-4 (citing *Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies*, SSR 06-3p (reprinted at 2006 WL 2329939, at * 4-5) (SSA Aug. 9, 2006)).)

The consideration of such factors is not a requirement. While the regulations specify that the opinions of "other sources" must be considered, they do not address how to evaluate such evidence. *See* SSR 06-3p, at *3 ("These regulations [§§ 404.1527(c) & 416.927(c)] provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider relevant opinions and other evidence from "other sources" listed in 20 CFR 404.1513(d) and 416.913(d).") The Social Security Ruling cited by Plaintiff provides that the factors listed by Plaintiff "can be applied" to opinion evidence from "other sources." *Id.* at *4. Importantly, "[n]ot every factor for weighing opinion evidence will apply in every case." *Id.* "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source'[.]"

3

*Id.* at *5. However, "it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion." *Id.* Similar considerations apply to opinions from non-medical sources. *Id.*

The ALJ appropriately considered such factors. The ALJ noted that the findings of the Mental Residual Functional Capacity Questionnaire were "inconsistent with the findings contained within the consultative examination (Exh. 3F), and the responses contained in the Medical Source Statement completed by Dr. Rozenfeld (Exh. 10F)," both of which the ALJ found to be more consistent with the record and more persuasive than the questionnaire. (A.R. at PageID# 70, 78.) The ALJ also noted that Plaintiff's relationship with Braden and her colleague, Dr. David Mack, consisted of a "very short period of contact" of four months, and that the findings in the questionnaire were not supported by the notes from the "very few therapy sessions" which occurred during this time. (*Id.* at PageID# 78.) Last, the ALJ recognized that Braden, as a therapist, could not be considered a treating source. (*Id.*) This determination was legally correct. "[O]nly 'acceptable medical sources' can be considered treating sources." SSR 06-3p, at *2. This determination was relevant to weighing the opinion evidence. *Id.* ("Information from these 'other sources' cannot establish the existence of a medically determinable impairment."). Consequently, the record does not evidence any legal error in the ALJ's treatment of Braden's opinion.

4

As for the Magistrate Judge, he quoted the ALJ's discussion of the questionnaire and its shortcomings, cited to the relevant law, and found that the ALJ's consideration of Braden's opinion was appropriate. (R&R, at 13-16.) The Court agrees with the Magistrate Judge's analysis.

Third, Plaintiff objects to the Magistrate Judge's conclusion that the opinion of Mack was not that of a treating physician. This objection is contradicted by the R&R. The Magistrate Judge only concluded that Mack was not a treating physician at any time relevant for Plaintiff's claim for DIB. (R&R, at 11.) This conclusion is correct. Plaintiff did not see Mack until 2010, and for her DIB claim she was required to submit evidence demonstrating that she was disabled on or before December 31, 2006, the date her disability insured status expired. As the Magistrate Judge correctly pointed out, no explanation was provided of the foundation of any opinion by Mack regarding Plaintiff's purported limitations before she first saw Mack in March 2010. (R&R, at 14.)

As for the SSI benefits claim, the Magistrate Judge noted in a footnote that *if* the ALJ had found that Dr. Mack was not a treating physician because his contact with Plaintiff was limited to three visits, that finding would have been supported by substantial evidence. (R&R, at 13 n.7.) However, the ALJ did not explicitly make such a finding and neither did the Magistrate Judge. Additionally, neither the ALJ nor the Magistrate Judge found that Mack was not a treating physician. Instead, the ALJ found that (1) the opinion in the Mental Residual Functional Capacity Questionnaire was the opinion of Braden, who is not

5

a treating physician, and (2) that even if the opinion could also be attributed to Mack, the opinion in the Mental Residual Functional Capacity Questionnaire should be afforded little weight in light of the §§ 404.1527 and 416.927 factors, regardless of whether Mack is considered a treating physician or not.

First, the ALJ explained that "after comparing the signatures found in the medical records from Lansing Psychological Associates to the signature on the Mental Residual Functional Capacity Questionnaire, it appears that the questionnaire was filled out by a therapist for Dr. Mack" and "therapists are not acceptable treating sources." (A.R. at PageID# 78.) For the reasons discussed above, there was no error in the ALJ's decision to afford Braden's opinion little weight. Additionally, the ALJ analyzed the opinion as if it were Mack's in light of the §§ 404.1527 and 416.927 factors. These factors apply equally to medical opinions from treating and non-treating physicians. *See* SSR 06-3p ("Sections 404.1527 and 416.927 of our regulations . . . provide detailed rules for evaluating medical opinions from 'acceptable medical sources.' . . . The regulations set out factors we consider in weighing medical opinions from treating sources, nontreating sources, and nonexamining sources."). The ALJ concluded as follows:

> As for the other opinion evidence, a Mental Residual Functional Capacity Questionnaire completed on July 30, 2010 by or on behalf of Dr. David Mack, a doctor at Lansing Psychological Associates, indicated diagnoses of depressive disorder, moderate; and panic disorder with agoraphobia, with a current GAF of 45 (Exh. 14F, p. 1). I do not credit the opinion from Dr. Mack any weight. Under the regulations, I must consider the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the

6

> physician's opinion. See 20 C.F.R. § 404.1527(d)(2).
>
> Dr. Mack's opinion was rendered after a very short period of contact with the claimant. Dr. Mack first saw the claimant about four months prior to rendering his opinion, and the notes from these few therapy sessions do not support a finding that the claimant is unable to work. The opinion evidence is also inconsistent with the findings contained within the consultative examination (Exh. 3F), and the responses contained in the Medical Source Statement completed by Dr. Rozenfeld (Exh. 10F).

(A.R. at PageID# 78.) Given the ALJ's findings of inconsistencies, the opinion espoused in the Mental Residual Functional Capacity Questionnaire was not entitled to special weight even if it could be attributed to Mack and even if Mack could be considered a treating physician:

> [T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent . . . with the other substantial evidence in the case record."

*Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). Accordingly, the Court finds no legal error in the ALJ's treatment of Mack's opinion.

The Magistrate Judge correctly quoted the applicable law governing opinions of treating physicians (R&R, at 8-10), and applied that law correctly to his analysis of the ALJ's treatment of Mack's opinion (R&R, at 11-16). Consequently, Plaintiff's third objection is overruled.

Fourth, Plaintiff objects to the Magistrate Judge's dismissal of Plaintiff's argument

7

that the ALJ went outside the record when he concluded that Plaintiff's treatment was inconsistent with a severe condition. Contrary to Plaintiff's objection, the Magistrate Judge did not "ignore" this argument. Instead, the Magistrate found that the conclusion that Plaintiff's treatment was conservative was amply supported by the record:

> Plaintiff argues that the Commissioner committed "legal error in taking administrative notice of matters not in evidence" when she described plaintiff's medical care as "conservative." (Plf. Brief at ID#s 445-47). The period at issue spans almost a full decade: April 1, 2001, to October 25, 2010. Plaintiff's only hospital emergency room record for this entire period was for her episode of Vicodin withdrawal on May 21, 2002. (A.R. 223-30). Plaintiff never required hospitalization for her mental impairments. Conservative treatment is convenient shorthand for relatively minimal and minimally invasive care. *See, e.g.*, *LeFevers v. Commissioner*, 476 F. App'x 608, 610 (6th Cir. 2012); *Jones v. Commissioner*, No. 2:12-cv-110, 2012 WL 5378850, at * 7 (S.D. Ohio Oct. 30, 2012). I find no error.

(R&R, at 19.) The Court agrees with this analysis and the conclusion reached.

**B. Alleged Error of Fact**

Plaintiff's last objection is that the Magistrate Judge's conclusion that Plaintiff did not suffer from significant limitations was not supported by the facts on the record, namely the conclusions reached by Mack, Braden, and Dr. Peter Cooke. Essentially, the argument appears to be that the Magistrate Judge erred in finding that substantial evidence supported the ALJ's finding that Plaintiff's medical care was conservative and did not evidence significant limitations. The Court agrees with the Magistrate Judge that substantial evidence supported these factual findings.

For the reasons discussed above, the ALJ's decision to afford little weight to the

8

conclusions reached by Mack and Braden (and the Magistrate Judge's agreement with this decision) was not in error. As for Cooke's conclusions, the ALJ found that they were inconsistent and unsupported:

> Dr. Peter Cooke completed a Physical [R]esidual Functional [C]apacity Questionnaire on April 14, 2010, which indicated that the claimant was unable to work competitively, because while she would be able to perform work at the sedentary exertional level, her symptoms would cause her to be absent about four days per month (Exh. 11F, p 4). However, the doctor's treatment records do not reveal any objective evidence that supports such a limited ability to sit, stand, or walk. Dr. Cook's opinion is not at all supported by the objective medical evidence.

(A.R. at PageID# 78.) The Magistrate Judge correctly noted that the issue of residual functional capacity is reserved to the Commissioner. (R&R, at 18 (citing 20 C.F.R. §§ 404.1527(d)(2)-(3) & 416.927(d)(2)-(3)).) Additionally, the Magistrate Judge found that the restrictions Cooke suggested were not supported by his progress notes or objective evidence, and instead evidenced the recording of Plaintiff's subjective complaints. In discounting Cooke's opinion, the Magistrate Judge also placed importance on the fact that Plaintiff's MRI showed that she had "mild" degenerative changes in her cervical spine, rather than cord or nerve root impingement, disc herniation or central spinal stenosis, or paraspinal soft tissue abnormality. (*Id.* (citing A.R. 238, 283-84).) Last, the Magistrate Judge explained that because Plaintiff stopped working in 2001, Cooke's opinion in 2010 that if she had kept working she would have missed about four days of work per month was conjecture and not a medical opinion. (*Id.* at 18-19 (citing *Murray v. Commissioner*, No. 1:10-CV-297, 2011 WL 4346473, at *7 (W.D. Mich. Aug. 25, 2011)).)

9

In contrast to the inconsistent and unsupported opinion evidence of Mack, Braden, and Cooke, the ALJ found that the opinion evidence of Drs. Ellen Rozenfeld and H.C. Tien was persuasive:

> I have given great weight to the opinions of the medical expert, Ellen Rozenfeld, Psy.D., and H.C. Tien, M.D., the psychiatric consultant for the state agency, as they both support a mild restriction in activities of daily living. The Medical Source Statement of Ability to do Work Related Activities (Mental) completed by Dr. Rozenfeld on June 6, 2010, indicates that the claimant has mild restrictions in her activities of daily living (Exh. 7F, p. 14). After reviewing the claimant's file, Dr. Rozenfeld noted that she was still capable of performing a general and full range of daily activities (Exh. 7F, p. 14). Dr. Tien, in his Psychiatric Review Technique completed on July 3, 2008, also indicates that the claimant has mild restrictions in her activities of daily living (Exh. GF, p. 11).

(A.R. at PageID# 70.) The ALJ went on to agree with Rozenfeld and Tien's conclusions that Plaintiff has "moderate difficulty in social functioning" and has a "moderate limitation in concentration, persistence, and pace." (*Id.* at PageID# 71.)

Additionally, the ALJ exhaustively reviewed the objective evidence in the record and determined that Plaintiff did not have an impairment that meets or equals one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926:

> Based on a comparison of the objective medical evidence and the requirements of the applicable listings, and in particular the musculoskeletal and mental impairment listings, I find that the claimant does not have an impairment that meets or equals one of the listed impairments.
>
> . . . [N]o treating or examining physician has indicated diagnostic findings that would satisfy any listed impairment. . . .

> In regards to listing 1.02, there is no evidence of clinical findings of inability to perform gross movements effectively with each of the upper extremities. In regards to listing 1.04, there is no evidence in the record of compromise of a nerve root or of the spinal cord, and there is insufficient evidence of ineffective ambulation. There are also no clinical findings of motor weakness in the claimant's lower extremities.

(A.R. at PageID# 69.) The ALJ further found that Plaintiff had only received "a limited amount of treatment" for her neck and shoulder pain, depression, and anxiety, that the MRI of her cervical spine revealed only mild degeneration, that Plaintiff had never had any treatment for the tear of the supraspinatus tendon of her left shoulder, and that Plaintiff's mental health treatment was "sporadic" with a gap in treatment of eight years. (*Id.* at PageID# 77.) The ALJ noted that Plaintiff had never undergone physical therapy for her back and had never been referred to a specialist. (*Id.*) Additionally, the ALJ cited the consultative examination which found that Plaintiff's mental impairments were well controlled by medication. (*Id.*)

In light of this abundance of evidence, the Court does not find any error in the Magistrate Judge's conclusion that the ALJ's factual findings regarding Plaintiff's condition were supported by substantial evidence.

## II.

Because all of Plaintiff's objections lack merit, the objections will be overruled and the Magistrate Judge's Report and Recommendation will be approved and adopted as the opinion of this Court.

An order consistent with this opinion will be entered.

Dated: August 26, 2013              /s/ Robert Holmes Bell
                                                          ROBERT HOLMES BELL
                                                          UNITED STATES DISTRICT JUDGE